**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ADA RIVERA and ROBERT MOSSBRUGER, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TWO RIVERS PROPERTIES, LLC, PADUA PARTNERS ACQUISITIONS, LLC, and PADUA PARTNERS INVESTMENTS, LLC,<br><br>Defendants. | Civil Action No.<br><br>CLASS ACTION COMPLAINT<br><br>Jury Trial Demanded |

**Nature of this Action**

1. Ada Rivera and Robert Mossbruger ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action against Two Rivers Properties, LLC ("Two Rivers"), Padua Partners Acquisitions, LLC, and Padua Partners Investments, LLC (together, "Padua") (Two Rivers and Padua are collectively "Defendants") under the Telephone Consumer Protection Act ("TCPA").

2. Upon information and good faith belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) by delivering more than one advertisement or marketing text message to residential or cellular telephone numbers registered with the National Do-Not-Call Registry ("DNC Registry") without the prior express invitation or permission required by the TCPA.

3. Additionally, upon information and good faith belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4) by delivering more than one advertisement

or telemarketing message to residential or cellular telephone numbers while failing to identify "the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

**Parties**

4. Ms. Rivera is a natural person who at all relevant times resided in Cicero, Illinois.

5. Mr. Mossbruger is a natural person who at all relevant times resided in North Olmsted, Ohio.

6. Two Rivers is a Nevada limited liability company that runs a marketing and real estate business.

7. Two Rivers' managing member, Samuel Wooten, is a natural person who at all relevant times resided in Rancho Cucamonga, California.

8. Padua consists of two Texas limited liability companies that are both headquartered in Claremont, California.

9. Upon information and belief, Padua's managers, Carlos A. Monroy and Jonathan D. Kumala, are natural persons who at all relevant times resided in Claremont, California.

**Jurisdiction and Venue**

10. This Court has subject matter jurisdiction under 47 U.S.C. § 227(b)(1)(a)(iii), and 28 U.S.C. § 1331.

11. Venue is proper before this Court under 28 U.S.C. § 1391(b)(2) as a significant portion of the events giving rise to this action occurred in this district.

12. In particular, given that Defendants are based in this district, upon information and good faith belief, the solicitation messages originated in this district.

## Factual Allegations

13. Ms. Rivera is, and has been at all times relevant to this action, the regular and sole user of two cellular telephone numbers; one which she uses as her cellular telephone number for everyday life outside the house—(708) 910-XXXX—and one which she uses as the equivalent of a landline telephone that never leaves her home—(708) 652-XXXX.

14. Ms. Rivera uses her cellular telephones as her personal residential telephone numbers.

15. Mr. Mossbruger is, and has been at all times relevant to this action, the regular and sole user of his cellular telephone number—(440) 668-XXXX.

16. Mr. Mossbruger uses his cellular telephone as his personal residential telephone number.

17. In 2003, the Federal Communications Commission ("FCC") ruled that cellular telephone numbers that are placed on the DNC registry are presumed to be residential. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003).

18. Ms. Rivera registered her "910" cellular telephone number with the DNC Registry on February 21, 2024, and her "652" cellular telephone number on August 29, 2005, and has maintained those registrations through the present date.

19. Mr. Mossbruger registered his cellular telephone number with the DNC Registry on April 5, 2018 and has maintained that registration through the present date.

20. Beginning in June 2024, Ms. Rivera started receiving numerous text messages from a rotating series of phone numbers on behalf of Two Rivers:

Xfinity Mobile 5:05 PM 96%

+1 (217) 579-9178

Text Message
Sun, Jun 23, 11:40 AM

Hello Ada, it's Samuel from Two Rivers. We purchase homes in Cicero for fair cash. Would you like to explore this option for your home at 2708 S 60Th Ct?

21. Ms. Rivera did not recognize the sender, is not selling her home, and was not looking to sell her home.

22. Ms. Rivera received these text messages to *both* of her cellular telephone numbers, with the "910" telephone number receiving text messages on, at least, June 22, 2024, July 15, 2024, August 9, 2024, and September 20, 2024, and the "652" telephone number receiving text messages on, at least, June 23, 2024, August 9, 2024, and September 20, 2024.

23. Similarly, beginning in July 2024, Mr. Mossbruger also began receiving numerous text messages from a rotating series of phone numbers on behalf of Two Rivers:

24. Mr. Mossbruger did not recognize the sender, is not selling his home, and was not looking to sell his home.

25. Plaintiffs each asked for Two Rivers' website for the sole purpose of identifying

the sender of the text messages, given that the original text messages failed to sufficiently disclose the entity responsible for delivering them.

26. Two Rivers separately identified to Plaintiffs that its website was https://tworiverspropeties.com.[1]

27. Two Rivers' website touts that they offer "a quicker and more convenient solution for selling your property."[2]

28. Two Rivers' website also advertises that it pairs numerous services with its offers to purchase properties from consumers.

29. On this website, Two Rivers includes a number of testimonials from homeowners which reflected on the services Defendants provided them.[3]

30. In one testimonial, "Pam A." stated that Two Rivers was "extremely helpful in finding solutions to any and all challenges that surfaced during the process" in selling her parents' home.[4]

31. In another testimonial, "David E." stated that Two Rivers "looked around to get the highest price or me" and "took care of all paperwork, including sending the notary to our house to sign the paperwork."[5]

32. In another testimonial, "Epi M." stated that Two Rivers "paid all the closing cost[sic] and ensured the paperwork was done behind the scenes" with respect to Two Rivers being

---

1 Please note that "properties" is intentionally misspelled in the URL, as tworiverspropeties.com is the correct and valid URL link.

2 https://tworiverspropeties.com/ (last visited September 19, 2024).

3 *Id.*

4 *Id.*

5 *Id.*

retained to sell "Epi M.'s" mother's house.[6]

33. Upon information and belief, the "Samuel" referenced in the above text messages is Samuel Wooten, managing member of Two Rivers.

34. Upon information and belief, Mr. Wooten is also a disposition manager for Padua.

35. Mr. Wooten actively and currently markets investment properties for Padua as assignment contracts to third-party investors, and the photographs in these listings, and other listings, contain photographs with a watermark by Padua its logo.[7]

36. Similarly, Mr. Wooten has previously advertised assignment contract properties under the "Two Rivers" name and branding on behalf of Padua, utilizing Padua-watermarked photographs and website links to listings by Padua.[8]

37. Additionally, Two Rivers' contact number, (210) 361-4947, has been listed as the contact number by some of Padua's other employees, such as Angelee Francesca.[9]

38. In addition to Two Rivers' website, Padua operates at least two other websites: (1)

---

[6] *Id*.

[7] *See, e.g.*, https://investorlift.com/property/177350/cook-county-lynwood-il-60411 (last visited September 19, 2024) (September 16, 2024 listing by Mr. Wooten on behalf of Padua); https://investorlift.com/property/177348/allen-county-new-haven-in-46774 (last visited September 19, 2024) (September 16, 2024 listing by Mr. Wooten on behalf of Padua).

[8] *See* https://www.facebook.com/groups/636104369791462/user/100074609896940/ (last visited September 19, 2024) (December 19, 2023 listing containing link to https://investorlift.com/p/105474, a listing by Mr. Wooten for Padua, and numerous other listings by Two Rivers with Padua-watermarked photographs).

[9] https://www.facebook.com/search/posts?q=(210)%20361-4947&filters=eyJycF9jcmVhdGlvbl90aW1lOjAiOiJ7XCJuYW1lXCI6XCJjcmVhdGlvbl90aW1lXCIsXCJhcmdzXCI6XCJ7XFxcInN0YXJ0X3llYXJcXFwiOlxcXCIyMDIyXFxcIixcXFwic3RhcnRfbW9udGhcXFwiOlxcXCIyMDIyLTFcXFwiLFxcXCJlbmRfeWVhclxcXCI6XFxcIjIwMjJcXFwiLFxcXCJlbmRfbW9udGhcXFwiOlxcXCIyMDIyLTEyXFxcIixcXFwic3RhcnRfZGF5XFxcIjpcXFwiMjAyMi0xLTFcXFwiLFxcXCJlbmRfZGF5XFxcIjpcXFwiMjAyMi0xMi0zMVxcXCJ9XCJ9IiwicnBfbG9jYXRpb246MCI6IntcIm5hbWVcIjpcImxvY2F0aW9uXCIsXCJhcmdzXCI6XCIxMTAyOTc3NDIzMzE2ODBcIn0ifQ%3D%3D (last visited September 19, 2024) (September 21, 2022 posting by Angelee Francesca, Padua's Disposition Manager).

a homeowner-facing website at https://paduahomes.com/; and (2) a real estate investor-facing website at https://www.paduapartners.com/.

39. Padua's homeowner-facing website appears similar to Two Rivers' website in design, and touts similar, if not identical offerings to help homeowners sell their homes.[10]

40. In fact, the websites are *so similar* that six of the seven testimonials on Padua's website are made by persons who posted similar testimonials on Two Rivers' website, with even some verbatim statements being attributed to other persons.[11]

41. For example, the statements echoed by "David E." *infra* ¶ 30 are verbatim conveyed by "Mario C." on Padua's website.[12]

42. Upon information and belief, Padua's business model primarily involves the wholesaling of properties through assignment contracts, as reflected by Defendants' prior listings and use of disposition managers.[13]

43. Given that Two Rivers and Mr. Wooten advertised properties utilizing Padua watermarks, advertise properties for or on behalf Padua, and employ Mr. Wooten as a disposition manager, Padua is ultimately responsible for and in control of Two Rivers' operations.

---

[10] *Compare* https://paduahomes.com/ (last visited September 19, 2024) *with* https://tworiverspropeties.com/ (last visited September 19, 2024).

[11] *Compare id.* (displaying testimonials from "Pam A.," "David E.," "Alma C.," "Megan L.," "Epi. M.," and "Mario C.") *with* https://paduahomes.com/ (last visited September 19, 2024) (displaying testimonials from "Alma C.," "Megan L.," "David E.," "Pam A.," "Epi M.," "Calvin W.," and "Mario C.").

[12] *Compare* https://paduahomes.com/ (last visited September 19, 2024) *with* https://tworiverspropeties.com/ (last visited September 19, 2024).

[13] https://www.offermarket.us/blog/dispositions (last visited September 19, 2024) ("Dispositions is a term that refers to liquidation (selling) of a property or an interest in a property (i.e. assignment of contract). The term dispositions is commonly used in wholesale real estate and by institutional real estate investors such as hedge funds, private equity funds and REITs. Real estate wholesalers typically have a "Dispositions Manager" who is responsible for assigning a contract of sale to an end buyer.").

44. Upon information and belief, Padua's control over Two Rivers' operations extends to Two Rivers' telemarketing operations.

45. Upon information and belief, Padua operates or partners with Two Rivers as part of its real estate wholesaler operations, including directing or causing Two Rivers to mass market to consumers via text message campaigns.

46. Alternatively, Padua knew or should have known that Two Rivers mass marketed to consumers via text message campaigns as part of Two Rivers' efforts to perform real estate wholesale operations on behalf of Padua, and Padua knowingly accepted the benefits of Two Rivers' telemarketing operations and ratified Two Rivers' conduct.

47. Furthermore, upon information and belief, Padua and Two Rivers share revenue resulting from these efforts.

48. Defendants necessarily offer to pair numerous services offered by a real estate agent—appraising the fair market value of the property, arranging for title and escrow services, preparing and completing purchase paperwork, and connecting the homeowner with third-party buyers—with their communications to Plaintiff.[14]

49. Upon information and belief, Defendants seek to supplant the role of a traditional real estate agent while providing the same services as a real estate agent, and in exchange for doing so, is compensated by obtaining a homeowner's property at a reduced price, and thereafter selling it at an inflated price.

---

[14] *See, e.g.*, https://www.liveabout.com/what-real-estate-agents-do-2866370 (last visited September 19, 2024) (noting that real estate agents assist home sellers by, among other things, "[d]etermin[ing[ the home's value in the current market"; "[c]oordinat[ing] the process from signing the contract to closing the deal, including scheduling inspections, preparing documents and other items necessary to close"; and "help[ing] the seller to try to get the price they want and to obtain a signed purchase agreement.").

50. Upon information and good faith belief, in exchange for providing these services, Defendants pay substantially below fair market value for the homes they seek to purchase.

51. As a result, Defendants would be (and, upon belief and information, are) compensated for their services in an analogous manner to a real estate agent: after providing services to facilitate the transaction, receiving compensation from the proceeds related to the buying or selling of a home.

52. Plaintiffs did not give Defendants prior express consent or prior express written consent to send text messages to their cellular telephone number.

53. The text messages at issue were sent for non-emergency purposes.

54. Upon information and good faith belief, the text messages at issue were sent by Two Rivers voluntarily.

55. The purpose of the text messages at issue was to advertise and to market Defendants' business or services.

56. Additionally, upon information and belief, Defendants also collect motivated seller consumer data and resell that information to investors, including by way of executing assignment contracts.

57. As a result, Defendants either (1) solicited Plaintiffs to sell their home to them at a discount in order for Defendants to resell or rent Plaintiffs' home(s), or (2) solicited Plaintiffs to submit their information to Defendants' lead generation service and, if Plaintiffs expressed an interest in selling their home(s), Defendants would then sell that via an assignment contract to investors for a profit.

58. Plaintiffs did not give Defendants prior express invitation or permission to send advertisement or marketing text messages to their cellular telephone numbers.

59. Plaintiffs suffered actual harm as a result of the text messages at issue in that they suffered an invasion of privacy, an intrusion into their lives, and private nuisances.

60. Plaintiffs suffered additional harm due to their frustration and difficulty in identifying the entity or entities and persons responsible for the unwanted advertisement or marketing text messages to their cellular telephone numbers.

61. Upon information and good faith belief, Defendants knew, or should have known, that Plaintiffs registered their cellular telephone numbers with the DNC Registry.

**Class Action Allegations**

62. Plaintiffs bring this action under Federal Rule of Civil Procedure 23, and as representatives of the following class:

**Federal Do-Not-Call Registry Class:**

All persons throughout the United States (1) to whom Two Rivers Properties, LLC, Padua Partners Acquisitions, LLC, or Padua Partners Investments, LLC delivered, or caused to be delivered, more than one text message within a 12-month period, promoting Two Rivers Properties, LLC's, Padua Partners Acquisitions, LLC's, or Padua Partners Investments, LLC's, or their business partners', goods or services, (2) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before Two Rivers Properties, LLC, Padua Partners Acquisitions, LLC, or Padua Partners Investments, LLC delivered, or caused to be delivered, at least two of the text messages within the 12-month period, (3) within four years preceding the date of this complaint through the date of class certification.

**Sender Identification Class:**

All persons throughout the United States (1) to whom Two Rivers Properties, LLC, Padua Partners Acquisitions, LLC, or Padua Partners Investments, LLC delivered, or caused to be delivered, more than one text message within a 12-month period, promoting Two Rivers Properties, LLC's, Padua Partners Acquisitions, LLC's, or Padua Partners Investments, LLC's, or their business partners', goods or services, (2) where the subject text messages did not state the name of the individual caller, the name of Two Rivers Properties, LLC, Padua Partners Acquisitions, LLC, or Padua Partners Investments, LLC, and a telephone number or address at which Two Rivers Properties, LLC, Padua Partners Acquisitions, LLC, or Padua Partners Investments, LLC may be contacted, (3) within four years preceding the date of this complaint through the date of class certification.

63. Excluded from the classes are Defendants, their officers, directors, managers, and

members, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

64. Upon information and belief, the members of the classes are so numerous that joinder of all of them is impracticable.

65. The exact number of members of the classes are unknown to Plaintiffs at this time and can be determined only through appropriate discovery.

66. The members of the classes are ascertainable because the classes are defined by reference to objective criteria.

67. In addition, the members of the classes are identifiable in that, upon information and belief, their cellular telephone numbers, names, and addresses can be identified in business records maintained by Defendants, and by third parties.

68. Plaintiffs' claims are typical of the claims of the members of the classes.

69. As they did for all members of the Federal Do-Not-Call Registry Class, Defendants delivered, or caused another to deliver, solicitation text messages to Plaintiffs' telephone numbers more than thirty days after Plaintiffs registered their cellular telephone numbers with the DNC Registry.

70. As they did for all members of the Sender Identification Class, Defendants delivered, or caused another to deliver, solicitation text messages to Plaintiffs' telephone numbers where the subject text messages did not state the name of the individual caller, the name of Defendants, and a telephone number or address at which it may be contacted.

71. Plaintiffs' claims, and the claims of the members of the classes, originate from the same conduct, practice, and procedure on the part of Defendants.

72. Plaintiffs' claims are based on the same theories as are the claims of the members

of the classes.

73. Plaintiffs suffered the same injuries as the members of the classes.

74. Plaintiffs will fairly and adequately protect the interests of the members of the classes.

75. Plaintiffs' interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the classes.

76. Plaintiffs will vigorously pursue the claims of the members of the classes.

77. Plaintiffs have retained counsel experienced and competent in class action litigation.

78. Plaintiffs' counsel will vigorously pursue this matter.

79. Plaintiffs' counsel will assert, protect, and otherwise represent the members of the class.

80. The questions of law and fact common to the members of the classes predominate over questions that may affect individual members of the classes.

81. Issues of law and fact common to all members of the classes are:

a. Defendants' conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing text messages;

b. For the Federal Do-Not-Call Registry Class, Defendants' practice of delivering text messages, for solicitation purposes, to telephone numbers already registered on the DNC Registry for more than thirty days;

c. For the Sender Identification Class, Defendants' practice of delivering text messages, for solicitation purposes, without identifying the name of the

          individual caller, the name of Defendants, and a telephone number or address at which Defendants may be contacted;

    d.    Whether Padua is responsible for the conduct of Two Rivers based on agency theories;

    e.    Defendants' violations of the TCPA; and

    f.    The availability of statutory penalties.

82. A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

83. If brought and prosecuted individually, the claims of the members of the classes would require proof of the same material and substantive facts.

84. The pursuit of separate actions by individual members of the classes would, as a practical matter, be dispositive of the interests of other members of the classes, and could substantially impair or impede their ability to protect their interests.

85. The pursuit of separate actions by individual members of the classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendants.

86. These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the classes.

87. The damages suffered by the individual member of the classes may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the classes to redress the wrongs done to them.

88. The pursuit of Plaintiffs' claims, and the claims of the members of the classes, in one forum will achieve efficiency and promote judicial economy.

89. There will be no extraordinary difficulty in the management of this action as a class action.

90. Defendants acted or refused to act on grounds generally applicable to the members of the classes, making final declaratory or injunctive relief appropriate.

**Count I**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Federal Do-Not-Call Registry Class**

91. Plaintiffs repeat and re-allege each and every factual allegation contained in paragraphs 1-90.

92. A text message is a "call" as defined by the TCPA. *See, e.g.*, *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) ("It is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].'") (internal citation omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

93. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

94. Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

95. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this

subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

96. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiffs and the class members who registered their respective cellular or residential telephone numbers with the DNC Registry, which is a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

97. Defendants violated 47 U.S.C. § 227(c)(5) because they delivered, or caused to be delivered, to Plaintiffs and members of the Federal Do-Not-Call Registry Class, more than one solicitation call or text message in a 12-month period in violation of 47 C.F.R. § 64.1200.

98. In the alternative, Two Rivers violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiffs and the class members who registered their respective cellular or residential telephone numbers with the DNC Registry, and Padua is liable for Two Rivers' violations because it ratified Two Rivers' conduct by accepting leads generated by Two Rivers' telemarketing campaign, and agreeing to share revenue with Two Rivers that arose out of that telemarketing campaign.

99. As a result of Defendants' violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200, Plaintiff, and the members of the Federal Do-Not-Call Registry Class, are entitled to damages in an amount to be proven at trial.

**Count II**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Sender Identification Class**

100. Plaintiffs repeat and re-allege each and every factual allegation contained in paragraphs 1-90.

101. A text message is a "call" as defined by the TCPA. *See, e.g.*, *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) ("It is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].'") (internal citation omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

102. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(d), provides in relevant part that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." *Id.* at § 64.1200(d)(4).

103. Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

104. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

105. Defendants violated 47 C.F.R. § 64.1200(d)(4) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiffs and the class members

while failing to "provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

106. Defendants therefore violated 47 U.S.C. § 227(c)(5) because they delivered, or caused to be delivered, to Plaintiffs and members of the Sender Identification Class, more than one solicitation call or text message in a 12-month period in violation of 47 C.F.R. § 64.1200(d)(4).

107. In the alternative, Two Rivers violated 47 C.F.R. § 64.1200(d)(4) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiffs and the class members while failing to "provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted," and Padua is liable for Two Rivers' violations because it ratified Two Rivers' conduct by accepting leads generated by Two Rivers' telemarketing campaign, and agreeing to share revenue with Two Rivers that arose out of that telemarketing campaign.

108. As a result of Defendants' violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4), Plaintiff, and the members of the Sender Identification Class, are entitled to damages in an amount to be proven at trial.

**Prayer for Relief**

WHEREFORE, Plaintiffs prays for relief and judgment, as follows:

    a. Determining that this action is a proper class action;

    b. Designating Plaintiffs as class representatives of the classes under Federal Rule of Civil Procedure 23;

c. Designating Plaintiffs' counsel as class counsel under Federal Rule of Civil Procedure 23;

d. Adjudging and declaring that Defendants violated 47 U.S.C. § 227(c)(5);

e. Enjoining Defendants from continuing their violative behavior, including continuing to deliver solicitation text messages to telephone numbers registered with the DNC Registry for at least thirty days;

f. Awarding Plaintiffs and the members of the class damages under 47 U.S.C. § 227(c)(5)(B);

g. Awarding Plaintiffs and the members of the classes treble damages under 47 U.S.C. § 227(c)(5)(C);

h. Awarding Plaintiffs and the classes reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i. Awarding Plaintiffs and the members of the classes any pre-judgment and post-judgment interest as may be allowed under the law; and

j. Awarding such other and further relief as the Court may deem just and proper.

**Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all triable issues.

Date: October 10, 2024

*/s/ Logan A. Pardell*
Logan A. Pardell
lpardell@pkglegal.com
**Pardell, Kruzyk & Giribaldo, PLLC**
433 Plaza Real, Suite 275
Boca Raton, FL 33432
Tele: (561) 726-8444

Alex D. Kruzyk* (application for admission pending)
akruzyk@pkglegal.com
**Pardell, Kruzyk & Giribaldo, PLLC**
7500 Rialto Blvd., Suite 1-250
Austin, Texas 78735
Tele: (561) 726-8444

*Counsel for Plaintiffs and the proposed classes*